# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HARISHANKAR L. SANGHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-1652 (RMC) |
| | ) | |
| ANTHONY J. PRINCIPI, Secretary, | ) | |
| Department of Veterans' Affairs, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Harishankar L. Sanghi is a psychiatrist who was good at his job with the Department of Veterans' Affairs ("VA"). Dr. Sanghi, however, appears to have had an aversion to completing discharge summaries, which inform subsequent treating physicians of the course of treatment provided by the VA. When counseling, a written reprimand, and a 10-day suspension did not result in completed discharge summaries, Dr. Sanghi was removed from patient care and ultimately discharged. He sues the VA, alleging that the decision on his discharge was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; and unsupported by substantial evidence. This short  summary tells the tale: having reviewed the administrative record and the arguments of the parties, the Court finds that the VA is entitled to summary judgment. Plaintiff's complaint will be dismissed.

## I. BACKGROUND

Dr. Sanghi began his employment with the VA on July 11, 1977. Defendants' Statement of Material Facts Not in Dispute ("Facts") ¶ 1. Effective December 30, 1990, he was assigned to the Biloxi VA Medical Center as a Physician, Chief Grade. *Id.* He was discharged effective November 4, 1994. *Id.*

During March 1993, Dr. Sanghi was verbally counseled regarding his delinquent discharge summaries by Dr. Lowell Husband, Acting Chief, Psychiatry Service. *Id.* ¶ 2. By memorandum dated August 27, 1993, Dr. Sanghi was issued a written counseling memo by Dr. George B. Tipton, Acting Chief, Psychiatry Service. *Id.* ¶ 3. Dr. Tipton had earlier directed Dr. Sanghi to complete all of his delinquent discharge summaries before leaving work on August 19, 1993, but Dr. Sanghi had not completed that assignment. *Id.* Dr. Tipton directed Dr. Sanghi to dictate all delinquent discharge summaries by no later than September 2, 1993, and to keep current on all future discharge summaries. *Id.* Dr. Tipton warned of "serious disciplinary action" if Dr. Sanghi failed to comply. *Id.*

Another written counseling memorandum was issued to Dr. Sanghi by Dr. Tipton on December 17, 1993. This counseling memorandum indicated that Dr. Sanghi had been "verbally counseled on numerous occasions regarding delinquent discharge summaries, most recently in person on 12/9/03 and by telephone on 12/16/03." *Id.* ¶ 4. On January 21, 1994, Dr. Tipton issued another memorandum to Dr. Sanghi making the following points:

> (1) that he was pleased with Dr. Sanghi's active response to his memo of December 17, 1993 and his completion of the required dictation prior to the established deadline; (2) that he follows delinquent dictation closely and notes that Dr. Sanghi is again in violation of the hospital policy which requires dictation of the discharge summary prior to discharge; (3) that

> because of Dr. Sanghi's previously demonstrated disregard for prompt
> dictation, he would be required to be in strict compliance with local and
> national guidelines; and (4) that he was required to complete the narrative
> discharge dictation on each patient prior to the discharge order being
> written.

*Id.* ¶ 5.  Dr. Sanghi was required to complete all of his delinquent dictation prior to 4:00 p.m. on

January 26, 1994.  *Id.*

These actions did not cure the problem and a formal Reprimand was issued to Dr.

Sanghi on April 1, 1994, for failing to comply with his supervisor's directions to complete 19

delinquent discharge summaries by March 21, 1994.  *Id.* ¶ 6.  Thereafter, on May 4, 1994, Dr. Sanghi

was suspended for ten days for failing to comply with directions to complete 26 delinquent discharge

summaries by April 19, 1994.  *Id.*  By letter dated June 28, 1994, the VA proposed to discharge Dr.

Sanghi due to his failure to complete 27 delinquent discharge summaries by June 15, 1994, as

directed.  *Id.* ¶ 7. Dr. Sanghi was detailed to non-clinical responsibilities pending a decision on the

proposed discharge.  *Id.*  The VA notified Dr. Sanghi on July 18, 1994, that it had decided to

discharge him but would allow him to file an application for disability retirement instead, as he had

suggested in his response to the initial discharge notice.  *Id.* ¶¶ 8-9.

Dr. Sanghi applied for disability retirement and it was approved on September 19,

1994, by the Office of Personnel Management ("OPM").  *Id.* ¶ 11.  However, Dr. Sanghi

subsequently requested to withdraw his disability retirement application and OPM approved his

withdrawal by letter dated October 28, 1994.  The VA notified Dr. Sanghi on November 1, 1994,

that his discharge would be made effective November 4, 1994.  The discharge was based on three

separate charges:

1.  You failed to comply with VHA Standards and the Medical Center's requirements regarding dictation of discharge summaries which require that patient discharge summaries be completed prior to discharge and final summaries signed within ten (10) days of discharge;

2.  You failed to follow your supervisor's directions dated June 6, 1994, to complete twenty-seven (27) delinquent summaries by June 15, 1994; and

3.  Your failure to dictate discharge summaries compromises quality patient care and violates 5 CFR 2635.101(b)(5) which states that employees must put forth an honest effort in the performance of their duties.

Administrative Record ("A.R.") at 813.

As a physician appointed under the authority of 38 U.S.C. § 7401(l), Dr. Sanghi had the right to appeal his discharge (a "major adverse action") pursuant to 38 U.S.C. § 7461. Subsection (c)(3) of section 7461 states that "[a] question of professional conduct or competence is a question involving any of the following: (A) Direct patient care; (B) Clinical competence." 38 U.S.C. § 7461(c)(3).   Dr. Sanghi filed a timely appeal of the discharge action and requested a hearing before a Disciplinary Appeals Board ("DAB") on the charges.  Facts ¶ 18.  The DAB hearing was conducted during the week of March 14, 1995, and the DAB sustained the discharge, finding that each of the charges was sustained in whole.   The Under Secretary for Health approved the DAB decision on July 31, 1995.  *Id.* ¶ 19.

Dr. Sanghi filed his complaint in this action on July 20, 2001 and an amended complaint on August 20, 2001.[1]  He is proceeding *pro se*.  Perhaps as a result, the case has had a troubled procedural history.  The complaint was dismissed on May 24, 2002, for failure to effect

---

[1]  Plaintiff's complaint included claims challenging the reprimand and suspension, as well as Dr. Sanghi's discharge.  The Court does not have jurisdiction over the reprimand and the statute of limitations has run on the suspension.  Dr. Sanghi acknowledges that only the discharge remains pending.  *See* Plaintiff's Amended Complaint at 2, "Jurisdiction."

timely service under Rule 4(m) of the Federal Rules of Civil Procedure.  Dr. Sanghi's motion to reconsider the dismissal order was granted on July 24, 2002, and the amended complaint was reinstated.  After two extensions, the VA filed its answer on November 22, 2002.  When Dr. Sanghi did not appear at the initial scheduling conference on January 3, 2003, an Order to Show Cause by January 21, 2003 why the case should not be dismissed was issued.  Dr. Sanghi timely filed his response and the order to show cause was discharged.  Another scheduling conference was held telephonically on February 24, 2003, and the Court directed that the administrative record be filed by March 26, 2003, and that dispositive motions be filed in May 2003.

Dr. Sanghi repeatedly challenged the adequacy of the administrative record and the Court suspended the briefing schedule on May 12, 2003.  The VA filed an amended record on June 16, 2003, but Dr. Sanghi remained dissatisfied with it.  The parties fully briefed his motion to compel and the Court directed the VA to augment the administrative record with specified documents.  The briefing schedule was revised to order dispositive motions by March 22, 2004.  Unfortunately, that was not the end of the matter and the briefing schedule was again suspended.  The Court held a hearing on May 10, 2004, to address the scope of the administrative record.  Thereafter, the scheduling order was extended repeatedly on Dr. Sanghi's motion[2] but, on November 17, 2004, both parties filed motions for summary judgment on the discharge claim.  After a series of requests for additional time by both sides, briefing was finally completed on March 31, 2005, when the Court granted Dr. Sanghi's motion for leave to file a surreply.

The case is now ripe for resolution.

---

[2]  Because Dr. Sanghi is proceeding *pro se*, the Court has given him every opportunity to present his case as fully as he has deemed to be warranted.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c).  Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Only factual disputes that are capable of affecting the substantive outcome of the case under the governing law are deemed  "material" and "genuine."  *See Anderson*, 477 U.S. at 248; *Laningham v. United States Navy*, 813 F.2d 1236, 1242-42 (D.C. Cir. 1987).

## III.  ANALYSIS

Dr. Sanghi essentially asks the Court to reconsider the bases for his termination.  However, judicial review of a DAB/Secretarial decision is much more limited.  Under 38 U.S.C. § 7462, the Court reviews the administrative record and may set aside agency actions found to be: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule or regulation having been followed; or (C) unsupported by substantial evidence."  38 U.S.C. § 7462(f)(2); *see Ross v. U.S.P.S.*, 664 F.2d 191, 193 (8th Cir. 1981) ("Judicial review of dismissal from federal employment is limited to a determination that the applicable procedures have been complied with, and that the dismissal was supported by substantial evidence and was not arbitrary and capricious.").  The Court is persuaded

by the administrative record that the VA scrupulously followed the procedures set forth at 38 U.S.C.

§ 7462, including establishing a peer review panel of three health care professionals (which included

a member of Dr. Sanghi's own discipline of psychiatry) that convened a hearing, took evidence in

the form of testimony and documentary submissions, and ultimately recommended discharge.  The

Under Secretary for Health accepted that recommendation and issued the Department's final

decision.  Dr. Sanghi was represented by legal counsel throughout the proceedings.

In addition, the DAB made specific findings on each charge, starting with the

observation that "[t]he principle[sic] undisputed fact in this matter was that *Dr. Sanghi did not*

*dictate the discharge summaries in question*."  A.R. at 948 (emphasis added).  Dr. Sanghi did not

contest this basic fact before the DAB or the Secretary and does not contest it here.

None of the mitigating circumstances offered by Dr. Sanghi to excuse his failure to

complete the discharge summaries was credited by the Board:

> The Board found that the appellant had the ability to complete the discharge
> summaries as directed particularly insofar as he testified that he had
> completed other summaries in June, 1994.  He further testified that he
> refused to work nights or weekends to catch up on his delinquent
> summaries. The appellant maintained that a new telephone dictation system
> was installed in January, 1994 and inhibited his ability to complete his
> delinquent summaries.  The Board found this argument to lack merit
> particularly because the same system was used successfully by the appellant
> to dictate current summaries. . . .
>
> The Board found that the appellant had adequate time to complete the
> delinquent summaries. . . .
>
> The Board found that the appellant compromised quality patient care. . . .
> The appellant testified that failure to complete timely discharge summaries
> (no later tha[n] 60 days post discharge) renders them clinically irrelevant.
> The Board found clearly that discharge summaries are an important part of
> patient care and failure to complete them timely compromises that care.

> It is evident from the testimony offered that the appellant did not complete the legitimate assignment given to him, that he failed even to make any effort to that end, and that he neither recognized nor accepted his responsibility to do so.

A.R. at 948-949 (internal citations omitted).  The Board entered twelve (12) additional findings[3] to support its conclusion:  "appellant's behavior was repetitive and intentional" as a result of "a conscious volitional decision;" Dr. Sanghi "violated the basic tenets of the physician/patient relationship;" the VA had engaged in progressive discipline; Dr. Sanghi's years of service and otherwise-good skills were insufficiently mitigating; Dr. Sanghi's actions had "seriously compromised" his supervisors' confidence in him; there were no comparable circumstances on which to base Dr. Sanghi's claim of disparate treatment; discharge was appropriate; there was a significant impact on the reputation of the VA due to Dr. Sanghi's failure to prepare timely discharge summaries; Dr. Sanghi was "clearly on notice" and "had been repeatedly warned and progressively disciplined;" there was no potential for rehabilitation due to, in part, his continuing refusal to recognize that "his failure to dictate discharge summaries was an issue of professional conduct or competence;" there were no mitigating circumstances; and there were no alternative sanctions available.  A.R. at 950-951.

Given the details in the DAB's decision, and the uncontested fact that Dr. Sanghi was ordered to complete delinquent discharge summaries by June 15, 1994, and failed to do so, the Court finds that the DAB's decision, and the Under Secretary's acceptance of it, were not arbitrary, capricious, or an abuse of discretion and were supported by substantial evidence.

---

[3] The factors addressed by the DAB in its additional findings are those developed by the Merit Systems Protection Board in its review of federal civil-service discharges. *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981).

-8-

1. <u>Defenses to the First Charge</u>

Dr. Sanghi attacks the Board's decision in the first instance by arguing that the record shows contradictory jurisdictional statements, rendering the final decision of the Under Secretary arbitrary and capricious and not in accord with the law.  The discharge letter stated that the reasons for his discharge involved professional conduct or competence, A.R. at 814; the DAB said that the case involved a discharge "arising in part from a question of professional conduct and competence," *Id*. at 947; and the Under Secretary stated that the charges involved issues of professional conduct and competence.  *Id*. at 943.  This argument about semantics is wholly without merit.  Because Dr. Sanghi was the subject of a major adverse action that was based upon the VA's determination that he had shown compromised professional conduct or competence, the DAB had exclusive jurisdiction to consider his appeal even if other factors also pertained.  *See* 38 U.S.C. § 7462 (DABs "shall have exclusive jurisdiction" in cases involving a question of professional conduct or competence and a major adverse action).

More basically, Dr. Sanghi argues that there was no substantial evidence to support the conclusion that he failed in any way to provide adequate patient care or to document that care in the patient's chart.  Plaintiff's Motion for Summary Judgment ("Pl.'s Mem.") at 9.  He maintains that ["[t]he dictation of [a] discharge summary is not part of direct patient care."  *Id.; see also* Plaintiff's Opposition ("Pl.'s Opp.") at 6-7 ("The notation in the chart of the care provided is part of direct patient care, but not the dictation of [a] discharge summary.").  Dr. Sanghi also attempts to distinguish direct patient care from the completion of discharge summaries.  He argues that the former is performed by a physician acting in his professional capacity but the latter is performed by a physician acting as an employee.  From this distinction, he concludes that the physician *qua*

physician "cannot [be] give[n] [a] deadline which changes the priority to the detriment of the direct patient care." Pl.'s Mem. at 10.  These arguments are unavailing.  First, they overlook the testimony credited by the DAB exactly on this point: "The Board found that the appellant compromised quality patient care.  The majority of physicians who testified, including the appellant's own witnesses, agreed that the failure to timely dictate patient discharge summaries compromises quality patient care.  Such failures interrupt continuity of care with other clinics, hospitals or medical facilities and providers."  A.R. at 949.  Second, these arguments ask the Court to substitute its judgment for that of the DAB and the Under Secretary as to what constitutes professional conduct or competence.  The Court's role is to ensure that the DAB and the Under Secretary acted in conformance with the law, not to second-guess their professional medical judgments.  Their decision that Dr. Sanghi's repeated and intentional failures to complete patient discharge summaries demonstrated a failure of professional conduct or competence is well supported by substantial evidence.

As quoted above, the first charge accused Dr. Sanghi of failing to comply with VHA standards.  Before this Court, Dr. Sanghi argues that the standard in question was repealed by the Secretary on June 8, 1995, A.R. at 945, and therefore could not properly support the DAB's decision in 1994.  This argument is without merit.  The standard in question was in effect when Dr. Sanghi was directed to complete patient discharge summaries, when the Board issued its decision on June 9, 1994, when the Under Secretary issued the final agency decision on July 31, 1995, and when Dr. Sanghi's discharge became effective on November 4, 1994.  It is irrelevant that the standard was later repealed.

Dr. Sanghi further argues that he was current in dictating discharge summaries on 10 newly-discharged patients between June 6-28, 1994, that his suspension punished him for failure

to complete 27 earlier discharge summaries, and that the VHA standards and requirements "are static factors, which are violated only once for each delinquent discharge summary." Pl.'s Mem. at 13. The first argument is irrelevant: the problem was Dr. Sanghi's failure to become current on delinquent discharge summaries.   The rest of his argument was rejected by the DAB, whose reasoning is sound:

> The Board considered the appellant's argument that he was subject to a sort of 'double-jeopardy,' as he was discharged for the same dictation failures for which he had been previously suspended. The Board concluded that this argument lacked merit, finding instead that the appellant was given specific, legitimate instructions and deadlines to complete a properly directed assignment. The prior disciplinary action did not negate the need to dictate heretofore undictated discharge summaries. The Board felt that the appellant was blatantly insubordinate in disregarding this assignment.

A.R. at 948.  On June 6, 1994, Dr. Sanghi was given a deadline of June 15, 1994, to complete the dictation of all delinquent summaries. *See* Pl.'s Opp. at 13.  Dr. Sanghi explains why he failed to meet this deadline in his Opposition:

> On June 13, 1994, prior to the deadline of June 15, 1994 to complete dictation on delinquent summaries as directed, the supervisor requested the director to delay the proficiency rating of Dr. Sanghi for 90 days from its due date of April 19, 1994 so as to allow Dr. Sanghi to correct his deficiencies prior to the final report of proficiency (until July 18, 1994). The director approved the supervisor's request on June 13, 1994. (A.R. at 871). The supervisor sent the notice of his approval to Dr. Sanghi as required. Dr. Sanghi relied on the new deadline of July 18, 1994 to dictate summaries as directed.
>
> However, prior to expiry of the new deadline of July 18, 1994, the supervisor proposed Dr. Sanghi's discharge on June 28, 1994, and sequestered the records from him. (A.R. at 883) [F.N. 12]. [sic] Therefore, Dr. Sanghi was not guilty of the third offense, "failure to follow supervisor's directions" to be punished by discharged. [sic]

Pl.'s Opp. at 13.  There is no connection between the deadline for *Dr. Sanghi* to complete his

discharge summaries and the deadline for Dr. Sanghi's *supervisor* to complete his proficiency report, and Dr. Sanghi suggests none. Since Dr. Sanghi admittedly was given a deadline of June 15, 1994 and admittedly failed to complete *any* of the delinquent summaries by that date, the Court cannot find that the DAB was without substantial evidence or acted in a manner that was arbitrary, capricious or contrary to law when it found that the first charge against Dr. Sanghi had merit.

    2. <u>Defenses to Charge 2</u>

        In response to the second charge affirmed by the DAB, Dr. Sanghi argues: (1) that Dr. Tipton, Chief of Staff, did not have authority to direct him, an independent practitioner; (2) that Dr. Sanghi did not disobey his directions; and (3) that the charge did not arise out of professional conduct or competence.

        The argument concerning Dr. Tipton's authority rests on Dr. Sanghi's asserted ethical obligation to exercise his own professional judgment when caring for a patient. He states, "When Dr. Sanghi was performing in direct patient care capacity, he was not subject to supervision, control, deadline and priorities of his supervisor to the detriment of the patients under his care." Pl.'s Mem. at 16. For this reason, he argues that the DAB was arbitrary and capricious in holding that he "was given specific, legitimate instructions and deadlines to complete a properly directed assignment." *Id.* (citing A.R. at 948). This argument must fail. It merely demonstrates Dr. Sanghi's continuing opinion that the preparation of discharge summaries is not part of direct patient care. He would limit direct patient care to the circumstances in which he is dealing with a patient or entering information on the patient's immediate chart, where he exercises the full discretion of his experience and training. The DAB and the Under Secretary, however, have found that untimely discharge summaries interrupt continuity of care and directly compromise quality patient care. Testimony

before the DAB confirmed this point.  Dr. Sanghi refuses to see the connection between accurate and timely discharge summaries and direct patient care but the considered judgment of the physicians at the VA cannot be overcome by his lonely opinion.   Dr. Tipton was Chief of Staff at the Biloxi DVA facility and clearly had the authority and responsibility to ensure adequate patient care.  Both the first and third defenses to Charge 2 advanced by Dr. Sanghi must fail.

Dr. Sanghi admits that he was directed on June 6, 1994, to complete delinquent discharge summaries by June 15, 1994, and that he failed to do so.  The repetition of the assertion that the extension of time for his supervisor to complete a proficiency report extended Dr. Sanghi's deadline for completing the delinquent discharge summaries fares no better the second time around. The Court finds this argument illogical and without basis in the record.

Because the medical testimony clearly connected timely patient discharge summaries and direct patient care, the Court cannot find that the DAB was without substantial evidence or acted in a manner that was arbitrary, capricious or contrary to law when it found that the second charge against Dr. Sanghi had merit.

3.  Defenses to Charge 3

Dr. Sanghi advances four defenses to Charge 3, which accuses him of compromising patient care because of his failure to dictate discharge summaries: (1) a lack of record evidence demonstrating compromised patient care; (2) error by the DAB in upholding Dr. Tipton's decision on a different basis than the one stated by Dr. Tipton; (3) error by the DAB in misconstruing the principle of ethics for government employees; and (4) error by the DAB because the charge did not arise out of professional conduct and competence.  The first three will be addressed in turn; the fourth has already been addressed above.

-13-

The DAB explained that the failure to prepare timely discharge summaries "interrupts continuity of care with other clinics and hospitals.  The discharge summaries are an important part of patient care and failure to complete them timely compromises that care." A.R. at 949.  Dr. Sanghi accuses the DAB of applying a presumption without evidence.  Pl.'s Mem. at 20 ("In order for the agency to attach liability on Dr. Sanghi, the agency must at least show some evidence that not dictating discharge summaries within seven working days as directed, in fact, compromised quality of patient care of some of those patients or they received substandard [] care without the availability of discharge summaries.").  The Court disagrees.  The DAB did not adopt a presumption; it applied the collective professional judgment of its members based on the testimony before it.  "[T]he Board felt the appellant had a strong fiduciary role and responsibility to provide patients and their future caregivers succinct, accurate summaries of the care provided." A.R. at 950.  It is astonishing that even now Dr. Sanghi argues that a discharge summary is unimportant because "the original chart was always available, in addition to computerized record[s], discharge instructions to the patients, telephonic contact with the treating physician and information from the patient himself by a competent out-patient physician." Pl.'s Mem. at 20.  Comprised of physicians, including a psychiatrist, the DAB found otherwise.  The DAB's decision rests on substantial evidence and is not arbitrary, capricious or contrary to the law.

Dr. Sanghi's second challenge to the DAB's decision on Charge 3 is based  upon semantics.  He argues that the statement by Dr. Tipton that his "failure to dictate discharge summaries compromises quality patient care," A.R. at  813, is significantly different from the DAB finding that his "failure to dictate discharge summaries compromises patient care." A.R. at 947; *see* Pl.'s Mem. at 20.  Dr. Sanghi explains:

-14-

> The phrase, "compromises quality patient care" and "compromises patient
> care" are not synonymous.  The former pertains to the improvement in the
> quality patient care in the future throughout the facility, a general function
> of the entire Medical Staff; and the lat[t]er pertains to the physician's face-
> to-face evaluation and treatment actually provided to a particular [patient].
> The director's removal action was based on the former, a "quality
> assurance issue." (A.R. at 196, 215). [F.N. 16 & 16 A]. [sic] It was not based on
> 'direct patient care'. [sic] [F.N. 4]. [sic]

Pl.'s Mem. at 21.  Dr. Sanghi offers no support for the distinction he tries to draw between quality

patient care and patient care, and the Court finds none.  In addition, in its Finding #1 related to

Charge 3, "[t]he Board found that the appellant compromised quality patient care." A.R. at 949.

Accordingly, Dr. Sanghi's argument is without merit.

    The third challenge to Charge 3 is based on 5 C.F.R. § 2635.101(b)(5), which states

that "employees must put forth an honest effort in the performance of their duties."  Dr. Sanghi

argues that his dictation of discharge summaries for ten newly-discharged patients in June 1994 was

as much an honest effort to perform his duties as the dictation of "27 delinquent discharge

summaries as directed. . . . The only difference was in priorities. . . . There is a complete lack of

evidence in the record that Dr. Sanghi did not perform official duties in official time . . . ." Pl.'s

Mem. at 23.  This argument fails in the face of the DAB's comments concerning the potential for

rehabilitation of Dr. Sanghi: "The Board was further concerned about the appellant's

misunderstanding of a physician's terms of employment, to wit, his refusal to consider the use of

weekends or evenings for completion of summaries." A.R. at 949.  In other words, the DAB found

that Dr. Sanghi was not putting forth an honest effort to bring his discharge summaries current

because he failed and refused to do any work on them outside of his regular duty hours.  In light of

the DAB's findings that Dr. Sanghi owed his patients a physician's fiduciary duty to complete his

discharge summaries prior to the patient's discharge, the Court finds that the DAB's concerns that Dr. Sanghi would not use any of his evening or weekend time to complete those tasks fully supportive of its conclusion that he failed to give an honest effort in the performance of his duties.

    4.  <u>Defenses to the VA's Procedures</u>

        *A.  Did the Secretary fail to follow his own regulations?*

        Dr. Sanghi claims that the Under Secretary failed to impose a like penalty for like offenses, as required by his own regulations. *See* A.R. at 1068; *Ward v. Brown*, 22 F.3d 516 (2nd Cir. 1994) (reversing discharge for failure to consider regulation mandating that VA employees be given like penalties for like offenses). He notes that the Table of Penalties used by the VA states that it is to "be used as a guide in the determination of disciplinary and major adverse actions to help ensure that like actions are taken for like offenses." A.R. at 896. *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305 (1981), identifies the same concept as important in discipline or discharge cases. The DAB "found the evidence offered was insufficient both in specificity and substance to permit the conclusion that [the failures of other physicians to prepare timely discharge summaries] . . . were directly comparable circumstances." A.R. at 951. Thus, there was full consideration of the issue. Dr. Sanghi argues, however, that this finding is not supported by substantial evidence.

        Dr. Sanghi contends that the testimony of his witnesses was specific and comparable and that delinquency in dictating discharge summaries was pervasive. This argument is unsuccessful because there is no evidence in the record that other staff physicians at the facility failed or refused to complete delinquent discharge summaries after having been directed to do so by their immediate supervisors. Dr. Sanghi was not terminated solely for having many delinquent discharge summaries but, more critically, for completely failing to correct that deficiency in the face of repeated

instructions to do so and progressive discipline.  Since there is no evidence that a single other doctor had such an egregious record, there is no basis to find that the DAB or the Under Secretary failed to impose a like penalty for like offenses.

### B.  Could the Under Secretary properly review the DAB decision?

Section 7462 of Title 38 gives exclusive jurisdiction to disciplinary appeals boards appointed under 38 U.S.C. § 7464 (as was the DAB here) to review any case "which arises out of (or which includes) a question of professional conduct or competence" and in which a major adverse action was taken.  38 U.S.C. § 7462(a)(1)(A) & (B).  In a mixed case, the board must include "a statement of the board's exclusive jurisdiction . . . and the basis for such exclusive jurisdiction."  *Id.* § 7462(a)(2).  A mixed case includes a major adverse action involving professional conduct or competence *and* a less-severe adverse action, or does not arise out of a question of professional conduct or competence.  *Id.* § 7462(a)(3).  In its jurisdictional statement, the DAB stated that the case involved a discharge "arising in part from a question of professional conduct and competence," A.R. at 947.  Dr. Sanghi argues that the Board failed to identify which charge was a major adverse action arising out of professional conduct or competence and which was not a major adverse action or did not arise out of professional conduct or competence.  From this, he further argues that the Under Secretary was therefore unable to review the seriousness of each charge, apply appropriate mitigating factors, and determine an appropriate penalty for each charge sustained, pursuant to 38 U.S.C. § 7464(d)(3).  The decision to uphold the DAB was allegedly arbitrary and capricious for these reasons.

The Court finds no merit to this argument.  The DAB properly stated its exclusive jurisdiction and that it arose from a major adverse action implicating professional conduct and

competence.  The statute does not require a disciplinary appeals board to otherwise parse the charges,

as Dr. Sanghi suggests.  Further, the Court finds that the DAB's decision is specific: Charge 3

alleged, and the DAB found, "that the appellant compromised quality patient care."  A.R. at 949.

It further expressed its "serious concerns about the appellant's disregard for the clinical importance

of adequate and timely discharge summaries."  *Id.* at 951.  Charge 1 was sustained because it was

factually accurate, *id.* at 948 ("The Board found that Dr. Sanghi failed to complete patient discharge

summaries in accordance with VHA Standards . . . ."), and Charge 2 was sustained because Dr.

Sanghi "was blatantly insubordinate in disregarding this assignment" to complete the delinquent

summaries. *Id.*  These findings provide all the distinction that might be needed, if any is needed at

all, between which charge concerned professional conduct or competence and which concerned other

factors.

## IV. CONCLUSION

Having carefully considered all of Dr. Sanghi's arguments, the Court finds and holds

that the DAB decision, approved by the Under Secretary, was not arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; was not obtained without procedures required

by law, rule or regulation having been followed; and was supported by substantial evidence.

Accordingly, Plaintiff's complaint will be dismissed.  A memorializing order accompanies this

memorandum opinion.

Dated: August 31, 2005.          _____/s/_____
                                 ROSEMARY M. COLLYER
                                 United States District Judge